Good morning, Your Honors. May it please the Court, Counsel. My name is Krista Hart. I represent Tamekca Walker, the appellant. My goal is to reserve three minutes for rebuttal. All right. Good morning. The United States Supreme Court has held that in the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief. So the United States Supreme Court has clearly held that if evidence is so unduly prejudicial, the Fourteenth Amendment provides that relief. There is a mechanism there. So is your argument that Hawley was wrongly decided? Yes, it is. That would be my first argument, that it's wrongly decided. That circuit precedent, while it is certainly persuasive, it is not the ultimate case law that this Court should look at. It's Supreme Court precedent that looks at it. We, as a panel, are bound by Hawley anyway, though, right? We are. We are. So your question or your argument essentially is that you think we should take this en banc or urge our colleagues to take it en banc? That would be yes, certainly, because I think that Hawley was incorrectly decided. But if you're looking at But we're bound by Hawley. So that's what Judge Friedland's getting at. And Judge Callahan said that. So you've got three against you that were bound by Hawley. So we're understanding your backup argument to be that you would like us to urge our colleagues to take that case en banc, to revisit it. That's correct. Okay. So what's your second argument, please? Well, that's the only issue that's before this Court, is whether It's just that you said that your first argument is, and so No, my first argument is that you have to look to Supreme Court precedent. You don't consider Hawley. Hawley is my, that Hawley was wrongly decided is my second argument. Those are sort of the same thing, though, right? Hawley is wrongly decided because of your reading of Supreme Court precedent, in your view? Yes. Yes, essentially. Yes. But if you are bound by Hawley, then Hawley does preclude the review in this case. And it should go en banc, if the Court is so inclined. So now there's four of us. So why is this a good vehicle to take this issue en banc? It seems to me that perhaps there is something worth taking en banc here someday. But this case seems to me to be one in which there's really a harmlessness problem, because there was so much evidence against your client anyway. I would actually disagree with that, Your Honor. There was no cause of death. The pathologist couldn't come up with a cause of death. Except your client admitted that she put her hand over the child's mouth until the child stopped crying. That's true. She did admit that in the, I think it was the sixth interview that she did. But this was not, I would not say that this was a close case. And the government relied pretty significantly on these photos during their closing argument to say that Ms. Walker had abused this child previously. And, I mean, the prosecutor asked the jury the question, how do you explain these photos? How do you explain the condition of this child? I think what's really interesting is that neither of you provided us the photo. Well, after the trial, the photo was returned to the party that profited them. I did not have that. But the district court, but the last recent decision of the state court did look at the photo and made a determination that it wasn't unduly prejudiced, correct? And made a finding that there was relevance for a number of reasons. Yes. And neither of those reasons are supported by the record. Well, but the district court never even looked at the picture, right? Because normally, we would, I could just look at the, we would be looking at the picture. But the district court didn't look at the picture, right? That's true. I didn't have the exhibit to. And neither of you provided the picture. That's true. That's true. And the state court of appeal has the picture. It appears that they looked at it. They said they looked at it in the opinion. So where is it? Where are these pictures? I believe they would be in the possession of the Sacramento County District Attorney or the Deputy Attorney General who has the case file. Well, if they were so prejudicial, I would just think that would be the first thing that you would have the district court look at. Well, the government has them. I don't have them. I guess I could have done a motion to have the government present them, but I don't physically. I have the photos that were provided in discovery. I don't have the actual exhibit, so I don't know which ones were presented to. But when you were arguing to the district court, you were, well, not you necessarily — was it you and the district court? Yes, I did have the district court. Okay. Well, you were arguing, you were discussing what the last reasoned opinion was, and that court had reviewed them and made a determination that there was relevance and that it wasn't unduly prejudicial. That's true. The third — So they have it. Yes, they did. So you think they got returned after that appeal? I'm sorry? You think they went back to the prosecutors after that appeal? That is my understanding of how it typically works, yes. But they could still be there. In the third district court of appeal? Uh-huh. My — can I change subjects a bit? Sure. My — because your time's ticking away. My understanding is that your argument is that the photos were very prejudicial. Yes. Under the circumstances. Of course, it's a very tragic case. And that that is really mostly a function of what the state's pathologist expert had to say? Yes. About the fact that the photos weren't indicative of how the child's body would have appeared at the time of death or, you know, before her death, but were really the result of postmortem injuries? Correct. Was that testimony — I'm not trying to put words in your mouth. It's just that the time is ticking away. And you've argued that in your briefing. Was that testimony contradicted? No. No. So that's the only evidence that we have, is that these are photos of postmortem injuries. Okay. And the jury was told that, right? Well, the jury certainly heard the testimony of Dr. Super, yes. When the prosecutor made statements to the effect that the photos showing diaper ash may have been indicating that the child was crying and suggesting that that's what prompted the foster mother to put her hand over the child's mouth — again, I'm summarizing — were there objections to that testimony? To that argument, rather? To the state's argument that — Right. Right. My question is whether the defense objected when the prosecutor made those statements or those suggestions. I don't believe so. Because obviously the relevance of it was you have this little baby, and, you know, why would she do something? Why would your client do something like that? And it was because it was a crying baby that had diaper rash, and there was also an indication of — I mean, they can look at the age of injuries and the pathologist testified. So it was to show that it was not an accident. And when you say that the pathologist testified, yes, the baby's dead, but we don't know exactly how the baby died, it would have been the prosecutor's burden to show that the baby died by some other means than accident. So that sounds pretty relevant to me. Well, the problem is that the injuries occurred after she died. Then I don't know how they — Some of them did. Not all of them, because — In the photos at issue here, yes. All of the injuries in the eight exhibits of the post-mortem photos all occurred after death. The jury also heard evidence from one witness, at least, that the mother had used the cream she had been given and that the diaper rash had resolved prior to death. So that's suggesting the child didn't have a diaper rash at the time. There are a number of different witnesses who testified to a number of different things, and so it's hard to tell really what the state of the child's diaper rash was. It had cleared up. It came back. So it's hard to tell. Well, but also, too, that you made the comment when I said, well, your client confessed, didn't she? And you said, well, that was during the sixth interrogation. The first time she talked to the police, she said the baby died at 6 in the morning. Correct. And then they confronted her and said, no, the baby couldn't have died at that time, and then eventually she got — you know, it went through an iteration. So what the baby looked like at 6 o'clock, if you were going to argue, well, she really didn't — when she confessed at — you know, when she ultimately confessed in the sixth interrogation, that she was sort of bullied into that and she really didn't mean that, they would have to disprove that to show that, hey, you know, she lied when she said the baby died at 6 in the morning. The baby didn't die at 6 in the morning. So really the defense puts all of these things at issue. The prosecutor has to prove this wasn't an accident. They also have to prove that the statements, if she confessed, that she did in fact confess, and so it just — it's all pretty relevant. I disagree slightly because pretrial the defense moved to suppress the statements. When the statements were not suppressed and they were ruled that they were admissible, the defense then essentially had to embrace them because — and she did. And so the defense counsel at trial did say, yes, in fact, this is what happened, and accepted that sixth version as what her statement was. So at that point, the government did not have to do — Well, they always have the burden of proof. You can't leave things to — well, I'm taking a lot of time on that. I'm going to give you two extra minutes for rebuttal. Okay. Okay. May it please the Court? Good morning. My name is Catherine Chapman. I represent the warden. Let me address the photos themselves first of all since, as the Court has pointed out, they are not before the Court to see. They certainly could have been made part of the record on appeal by appellant back in the state court. That often happens. They are not normally part of the record of appeal, but you certainly can have them added. Were they in the record on appeal here? They were not in the transcripts. I believe what happened here is that the state court of appeal has a mechanism for having original exhibits transmitted directly to it, and I believe that's what happened here. Did the Court request them? Is that your understanding? I hate to say I think so, but I hate to say for sure because I'm not positive that the Court requested them. But you're saying there is a mechanism for that. The Court could have requested them. The Court can request them or a party can request that they be transmitted directly to the court of appeal. But as I said, Ms. Walker certainly could have asked to have a volume of augmented transcript with the photos. They would have had to have been in color. But the Court just decided this on saying that Hawley was controlling and didn't really do that analysis, right? That is correct. The District Court believed correctly, I believe, that it was bound by this Court's decision on Hawley and correctly decided that it doesn't matter what the photos look like because it's bound by Hawley. Opposing counsel has argued that we should suggest to our colleagues that Hawley should be taken en banc and revisited. What is your response to that? I think this is a very poor case to do that in. First of all, I think Hawley's right. If you look at the law that Petitioner is talking about, the basic right to a fundamentally fair trial and constitutional error, those are just the basic underpinnings of all federal habeas relief and have been since before the AEDPA amendments. So if you make decisions based on that very basic principle, there's constitutional, is there constitutional error, does it render a trial fundamentally unfair, then it sort of renders the AEDPA amendments irrelevant because you just go straight back to the source where we were before AEDPA. So I don't think that can be clearly established law. Well, can we even do a harmless analysis here if we haven't looked at the photo? I don't think you should. I think you should stop with Hawley and cases like it, like Moses v. Payne, that say the United States Supreme Court has not spoken to this. It has never said that the admission of relevant or prejudicial evidence can violate due process. Well, would it be your position that Walker has effectively waived her due process claims by not providing the court with a photo? Yes. Has she waived them or has she just not met her burden? That's a really good question. Certainly she has not met her burden. The district court didn't describe it as a waiver. It seems like a waiver to me. I don't know how you bring this claim without the photos. But she's been making the claim. There was no point along the way where she stopped making this claim. She just maybe isn't making it very well. This is true. This is true. And other reasons why this case makes such a poor vehicle for an in-bank case is, as this court has touched on, the photos are clearly relevant for three reasons. One, they illustrate the pathologist's testimony. That's a time-honored reason to have photographs. Well, do they illustrate the pathologist's testimony? The pathologist testified that those photos were not representative of anything other than post-mortem injuries. Yes, but I think that's a very—I think that would have been something the jury would have had to deal with. His testimony— Well, that's different than saying that they illustrated his testimony. I'm trying to understand that statement that you just made. I will tell you how they illustrate his testimony because most people have seen diaper rash, and I have seen these photos. This is not diaper rash. But it was—his testimony is that it wasn't diaper rash. His testimony is this is something that happened after the child was—had died. But, you know, his reliability of his testimony and his credibility is on the line like any other witness, and especially given the variety of evidence about diaper rash we have in this case from a number of sources, you know, the social worker, the daycare parents, and Ms. Walker herself, and particularly since during her interviews she mentioned the diaper rash, brought it up, and said that it was like an open sore, it was bleeding. What do you have to show in terms of—I know that you charge that the defendant was convicted of murder, but she was also charged with child abuse causing a child great bodily injury or what is it? Death? Resulting in death, yes. Is there a sufferer component to that? Had to show her intent to commit the acts. Had to show that her acts were intentional and not just negligent. Or that the baby did not die by accident. Right, right. Not by accident and not through mere negligence, but intentional actions. And so since the state had to prove intent, obviously evidence of motive is relevant to that finding. It backs up that finding. Well, counsel for appellant also said that even though I pointed out that her client did ultimately admit to the officers that she had put her hand over the baby's mouth because the baby was crying and she held it there until the baby stopped crying, but that that was a sixth interrogation or it was not initially admitted. But counsel for the appellant, her explanation of that was after they lost the motion for suppress, that they didn't take the position that she didn't really say that or that she didn't really confess. Was that true? See, what I'm saying is just if a person makes a lot of statements, you know, you can say, yeah, they said it, but they said it after they kept being asked questions and they really didn't mean it and they just were willing to say anything at any time. Did you still have to prove that that was, in fact, what she said and what she meant? Or did she take that off the table in the trial? No, of course. Of course the state still had to prove those things because she said many conflicting things in her interviews and it was for the jury to decide which of those statements were more accurate. Did he testify at trial? No. Did the jury hear the earlier statements? Did they hear that she had said 6 in the morning at some point and then later changed it? Yes. Yes, they did. And so it was up to them to decide what happened, you know, what really happened, because honestly, for example, her story about at one time saying 6 o'clock in the morning and another time saying midnight, I mean, the story about the baby dying at midnight and her not doing anything until 6.15 was rather startling. Does the injuries, the post-mortem injuries, have any significance in proving when the baby died? Yes. Yes, because the pathologist was able to say it would have taken at least three hours for this to happen after 6.30 in the morning when help arrived. It would have taken that long for that chemical reaction of the urine against the skin to take place. So they were definitely relevant to the time of death, which, as mentioned, was something the jury had to pin down. Well, is it relevant that if, in fact, it had been an accident that you would call right away as opposed to waiting six hours? Was there any argument about that made? I believe there was, but that is certainly something the jury would have had to think about. Why did the jury have to peg the time of death after her last statement? She had admitted that the child died at midnight. I think it goes to—I think it does go to her intent. I mean, I think if you had done something— Well, that's different than pegging the time of death because she had admitted the time of death. What you're saying now is different. Now you're saying that the fact that there was a delay before she called for help indicated that there was perhaps not an accident going on. That's a different argument. But the problem is she said more than one thing about the time of death and actually went back and forth during her interviews about it. So that was something that the state needed to present as much evidence as it could regarding. Again, you know, I think even if we were to go and bank on this case and say, is there a constitutional violation here that violates due process, then we're back to—even in the general sense, due process is a very narrow way to prove a case because the Supreme Court has said that outside of the specific guarantees in the Bill of Rights, due process has very limited application. And this Court has said if there's any reasonable inference to be drawn from the evidence, it doesn't violate due process. And I submit that there are a number of inferences to be drawn from this evidence and that it's relevant in a number of ways. And if I may say one word about prejudice, the photos themselves, even if you can't see them—may I finish my sentence? Sure. You know that these are not lethal wounds. These are not bleeding wounds. This is not dismemberment. It is not decomposition. It is not horrible in that sense. And at the same time, there were photos of marks all over the baby's face and head that the pathologist said looked like were inflicted, not just negligence, but inflicted when the baby was smothered. And so I submit that they are not prejudicial in that sense. Thank you. Thank you. As to the time of death— I gave her two minutes. I gave her two minutes. Thank you. The pathologist didn't start the autopsy until 2 o'clock in the afternoon, and there isn't any really clear, concise evidence about when the diaper was removed from the child. So as far as establishing the time of death, I don't know that the pathologist's testimony or the injuries contribute to assisting the jury in that regard at all. And as to why this case should be taken en banc, as I noted in my brief, the Ninth Circuit conflicts with several other circuits and seems to conflict with the Supreme Court. And so for that reason alone, to bring the Ninth Circuit into harmony with the other circuits and to adequately address and to correctly address the Supreme Court president en banc would be the way to go. Thank you. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Christen, Friedland